UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANDEEP G., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY,[1] <br><br> Defendant. | No. 20 CV 3645 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mandeep G. brings this action for judicial review of the Social Security Administration's (SSA) decision denying her application for benefits. For the following reasons, plaintiff's request to reverse and remand the SSA's decision [19][2] is denied, defendant's motion for summary judgment [20] is granted, and the SSA's decision denying plaintiff's application is affirmed.

## Background

### A. Procedural Background

In July 2017, plaintiff filed a Title II application for a period of disability and disability benefits, alleging a disability onset date of May 26, 2017, due to multiple sclerosis (MS). [18-1] 10. Plaintiff's claim was denied initially and on reconsideration. [*Id.*]. Plaintiff requested a hearing, which was held before an administrative law judge (ALJ) on March 19, 2019. [*Id.*]; [*id.*] 27-60. In a decision dated April 24, 2019, the ALJ found that plaintiff was not disabled and denied her application. [*Id.*] 10-17. The Appeals Council denied review on April 20, 2020, [*id.*] 1-5, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [18], which refer to the page numbers in the bottom right corner of each page.

timely appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).[3]

### B.     ALJ's Decision

The ALJ reviewed plaintiff's disability claim in accordance with the SSA's five-step sequential evaluation process. At step one of her decision, the ALJ found that plaintiff had not engaged in substantial gainful employment since her alleged onset date. [18-1] 12. At step two, the ALJ determined that plaintiff suffered from one severe impairment: multiple sclerosis. [*Id.*] 12-13. At step three, the ALJ ruled that plaintiff does not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments. [*Id.*] 13. Before turning to step four, the ALJ found that plaintiff had the residual functional capacity to perform "medium work," though the ALJ also found that plaintiff could only frequently push/pull with the non-dominant left upper and lower extremities and must avoid concentrated exposures to hazards, including dangerous moving machinery and unprotected heights. [*Id.*] 13-17 (emphasis in original). Later in her analysis of plaintiff's physical RFC, the ALJ reiterated that plaintiff was "capable of performing work involving the reduced range of medium exertion" before also stating that plaintiff was capable of only "sedentary work." [*Id.*] 15, 16. At step four, the ALJ determined that plaintiff could perform her past relevant work as a software engineer. [*Id.*] 17. Because that ruling meant that plaintiff was not disabled, the ALJ did not proceed to step five and consider whether other jobs existed in substantial numbers in the national economy that plaintiff could perform.

### Legal Standard

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a sequential five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a

---

[3] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [10].

2

determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

**Discussion**

Plaintiff argues that the ALJ's decision should be reversed for four reasons. First, plaintiff contends that the ALJ was required to assess her mental limitations by using the "Psychiatric Review Technique" (PRT), a method that plaintiff claims an ALJ must use "to determine severity at step two," to determine "whether a listing is satisfied at step three," and to "shap[e] the RFC." [19] 10. Because the ALJ either failed to apply the PRT at all, or failed to document the findings that the PRT generated, plaintiff contends that the ALJ's decision cannot be meaningfully reviewed. [*Id.*] 11-13. Second, plaintiff argues that the ALJ's decision is internally contradictory because (a) the ALJ allegedly recognized that plaintiff's MS caused some mental limitations but did not state whether plaintiff suffered from a mental impairment, and (b) the ALJ purported to limit plaintiff to both medium work and sedentary work. [*Id.*] 13-15. Third, plaintiff argues that the ALJ did not meaningfully evaluate the medical opinions in the record. [*Id.*] 15-16. Fourth, plaintiff maintains that the ALJ's subjective symptom evaluation was patently erroneous. [*Id.*] 16-21.

**A.   The ALJ Was Not Required To Use The Psychiatric Review Technique.**

Plaintiff first argues that the ALJ either failed to apply the supposedly required "Psychiatric Review Technique" to determine the extent of her mental limitations or, having applied the PRT, did not adequately explain what conclusions she drew from the PRT. [19] 10-12. Plaintiff maintains that this error undermined the ALJ's analysis at steps two and three, as well as the ALJ's determination of plaintiff's RFC, and prevents the Court from meaningfully reviewing the ALJ's decision. The Court rejects this argument. Because plaintiff introduced no evidence that she suffers from a mental impairment, the ALJ was not required to apply the PRT to determine the severity of such impairment or the extent to which such impairment caused work-related limitations.

3

Under the applicable SSA regulations, "when a mental impairment is found to be a medically determinable impairment, it must be reviewed using 'a special technique at each level of the administrative review process.'" *Lisa G. v. Kijakazi*, No. 21-cv-3732, 2022 WL 4272782, at *2 (N.D. Ill. Sept. 15, 2022) (quoting 20 C.F.R. § 404.1520a); *see also Sheila M. v. Saul*, Case No. 20 C 664, 2021 WL 1784775, at *3 (N.D. Ill. May 5, 2021) (stating that the "psychiatric review technique" that is "described in 404 CFR 404.1520a" "requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the paragraph B and paragraph C criteria of the adult mental disorders listings"). "This special technique includes rating the degree of limitation in four areas: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting or managing oneself." *Lisa G.*, 2022 WL 4272782, at *2 (citing 20 C.F.R. § 404.1520a(c)(3)). Limitations in these areas are measured on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). Case law and SSA regulations refer to this "special technique" as the "Psychiatric Review Technique." *See, e.g.*, *Carly M. v. Kijakazi*, No. 20 C 2995, 2022 WL 2237132, at *4 (N.D. Ill. Jun. 22, 2022) (describing psychiatrist's completion of "an agency form entitled 'psychiatric review technique' in which he concluded that Plaintiff met the criteria" for two listed impairments); *Ronning v. Colvin*, 555 F. App'x 619, 621 (7th Cir. 2014) (describing consulting psychologist's conclusion, "[i]n a form labeled 'Psychiatric Review Technique,'" that plaintiff did not have a medically determinable impairment).

The ALJ was not required to apply the PRT in this case because plaintiff does not suffer from a mental impairment. Plaintiff has not offered evidence or argued that she suffers from a mental impairment; rather, plaintiff sought disability benefits based on her diagnosed multiple sclerosis, a condition that the Listings characterize as a neurological disorder. *See Grace E. B. v. Comm'r of Soc. Sec.*, Case No. 19-cv-1136-MAB, 2020 WL4747697, at *7 (S.D. Ill. Aug. 17, 2020) ("The 11.00 series of the Listings covers neurological disorders," including MS). At step two, moreover, the ALJ agreed that plaintiff's multiple sclerosis was a severe impairment, and later in her decision the ALJ crafted an RFC determination after considering the extent to which plaintiff's MS limited her ability to work. *See* [18-1] 12-13, 14-16. Because plaintiff does not suffer from a mental impairment, the ALJ's "failure" to apply the PRT–a key purpose of which is to establish the severity of a mental impairment–at step two was not an error. *See Angie R. v. Saul*, Case No. 20-cv-1442, 2021 WL 2950152, at *9-11 (D. Minn. Jul. 14, 2021) (ALJ not required to use PRT in case where plaintiff alleged that her multiple sclerosis caused work-related mental limitations). And while plaintiff faults the ALJ for not applying the PRT at step three, this argument fails because, again, plaintiff does not contend that she has a mental impairment, and plaintiff does not argue (or cite any evidence that would support an argument) that she meets or equals Listing 11.09, which addresses multiple sclerosis. *See* [19] 10-13.

4

**B. The Inconsistencies In The ALJ's Decision Identified By Plaintiff Did Not Affect The Denial Of Benefits.**

Plaintiff next argues that the Court cannot meaningfully review the ALJ's decision because it is logically inconsistent. [19] 13-14. In support, plaintiff contends that the ALJ "did not commit to whether [she] had mental impairments of some degree or had no mental impairments." [*Id.*] 14. Plaintiff also notes that the ALJ's physical RFC determination is internally inconsistent because the ALJ purported to limit plaintiff to medium work but also stated that she was capable of only sedentary work. [*Id.*] 14-15. These contentions provide no basis for reversing or remanding the ALJ's decision.

First, regarding the supposed inconsistencies concerning mental impairments, the Court reiterates that plaintiff has offered no evidence that she suffers from any mental impairment, whether severe or non-severe. None of the agency doctors who evaluated plaintiff diagnosed her with a mental disorder or found that plaintiff suffered from a mental impairment of any severity. *See, e.g.*, [18-1] 337-38 (psychological evaluation prepared by Dr. Shannon Doyle on September 11, 2017); [*id.*] 367-69 (mental status examination prepared by Dr. Randy Kettering on March 13, 2018); (internal medicine consultative evaluation prepared by Dr. Debbie Weiss on March 14, 2018). The ALJ's decision could not be any clearer that the ALJ did not believe that plaintiff had a mental impairment, and plaintiff has not cited any evidence that is even arguably inconsistent with that decision.

Plaintiff's argument that the ALJ's decision on this point is somehow internally inconsistent appears to rest on the following passage, which appears during the ALJ's discussion of plaintiff's ability to complete certain activities of daily living (ADLs):

> The claimant admits she performs self-care, prepares meals, drives a car, performs household chores, goes grocery shopping. In addition, she reads, uses a computer, manages her finances, has friends, goes out for dinner, and watches television. The performance of such activities on a regular and continuing basis indicates that the claimant's level of pain and mental impairment does not seriously interfere with her *ability to maintain attention and concentration, perform routine tasks, understand and follow simple instructions, adapt or manage herself and interact with others.*

[18-1] 15 (emphasis added); *see also* [19] 14 (plaintiff's brief citing this portion of ALJ's decision).

Plaintiff's argument seems to be that, if the ALJ had actually decided that she did not have a mental impairment, there was no reason for the ALJ to consider whether plaintiff had any limitations in these areas of mental functioning. Stated

5

another way, because the ALJ considered plaintiff's ability to function in these four areas–areas that an ALJ must consider when applying the PRT, *see* 20 C.F.R. § 404.1520a(c)(3)–the ALJ must have found that plaintiff had a mental impairment. This argument lacks merit. In the Court's view, the ALJ focused on these areas of mental functioning because they were relevant to whether plaintiff met or equaled Listing 11.09. Under Listing 11.09, a claimant's multiple sclerosis may be found to be presumptively disabling under two sets of criteria: the "paragraph A" criteria, which focus on extreme limitations resulting from disorganized motor function in the extremities; and the "paragraph B" criteria, which focus on marked limitations in physical functioning and in the four areas of mental functioning addressed by the ALJ: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *See* 20 C.F.R. Pt. 404, Subpt. P, App, 1, Listing 11.09. Thus, when the ALJ said that plaintiff's "level of pain and mental impairment does not seriously interfere with" these four areas of mental functioning, the ALJ was providing support for her conclusion that plaintiff did not have a marked limitation in these areas and, consequently, did not meet the "paragraph B" criteria of Listing 11.09. *See* 20 C.F.R. Pt. 404, Subpt. P, App 1, Listing 11.00G2b ("a marked limitation means that, due to the signs and symptoms of your neurological disorder, you are *seriously limited* in the ability to function independently, appropriately, effectively, and on a sustained basis in a work setting") (emphasis added). Contrary to plaintiff's argument, there is no inconsistency in the ALJ's handling of plaintiff's undocumented and–as far as the record before the Court shows–nonexistent mental impairments, let alone an inconsistency warranting a remand.

Second, the Court agrees with plaintiff that the ALJ's physical RFC determination is internally inconsistent. The ALJ initially concluded that plaintiff could perform medium work. [18-1] 17. The ALJ reiterated that point later in her decision, [*id.*] 15, before concluding, near the end of her RFC analysis, that plaintiff only had "the residual functional capacity to perform sedentary exertional work." [*Id.*] 16. This is a meaningful inconsistency because limiting plaintiff to sedentary work is more restrictive than limiting her to medium work. *E.g.*, *Joy B. v. Kijakazi*, No. 20 C 3238, 2023 WL 415544, at *5 (N.D. Ill. Jan. 25, 2023) ("The only opinions from the relevant period limited Claimant to medium work, but the ALJ went further and restricted Claimant to sedentary work.").

That said, the Court also finds that the ALJ's error was harmless. *See Karr*, 989 F.3d at 513 ("But if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required."). At step four, the ALJ found that plaintiff could perform her past relevant work as a software engineer. During the hearing, the vocational expert (VE) testified without objection that the software engineer position was classified as a "sedentary" position and "appeared to be really sedentary as performed" [18-1] 60, and the ALJ's decision reflects that she accepted this characterization. Accordingly, even if the ALJ should

6

have limited plaintiff to sedentary work only, such a limitation would have been consistent with the ALJ's finding that plaintiff could perform her past relevant–and sedentary–work as a software engineer.[4] Accordingly, no remand is warranted.

### C. The ALJ's Handling Of The Opinion Evidence Was Not Reversible Error.

Plaintiff also argues that the ALJ erred in evaluating the opinion evidence. [19] 15-16. Plaintiff contends that the ALJ "did not find any opinion persuasive or give any opinion particular weight." [*Id.*]. While the Court agrees that the ALJ did not follow the SSA's regulations for weighing opinion evidence, this error was harmless because none of the opinion evidence was favorable to plaintiff's claim. *See Karr*, 989 F.3d at 513.

"An ALJ has an obligation to evaluate every medical opinion and explain the weight given to the opinion." *Georgios A. v. Kijakazi*, No. 20-cv-2729, 2022 WL 1004249, at *5 (N.D. Ill. Apr. 4, 2022) (internal quotation marks omitted). In cases like this one, where the disability claim was filed after March 27, 2017, the ALJ was not required to give controlling weight to the opinions of a treating physician. *See* 20 C.F.R. § 1520c. "Instead, the most important factors are a medical opinion's 'supportability' and 'consistency' with the evidence in the record." *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). Similarly, "[w]hen evaluating a non-treating source's opinion, the ALJ is required to determine the weight to assign the opinion by considering certain regulatory factors, including the claimant's examining and treatment relationship with the source of the opinion; the physician's specialty; the support provided for the medical opinion; its consistency with the record as a whole; and any other factors that tend to support or contradict the opinion." *Michael G. v. Kijakazi*, No. 19 CV 6017, 2022 WL 4119775, at *12 (N.D. Ill. Sept. 9, 2022) (internal quotation marks omitted).

The ALJ in this case did not follow this process for weighing the various opinions in the record. Rather, the ALJ simply summarized the contents of the doctors' opinions and did not expressly indicate whether, the extent to which, or why she found these opinions to be well-supported and consistent with other evidence in

---

[4] Plaintiff suggests in passing that her past relevant work was not a sedentary position because her employer described that job as requiring travel fifty percent of the time. *See* [19] 20 (citing [18-1] 185). But plaintiff (who was represented by counsel at the hearing, *see* [18-1] 29) did not object to the VE's testimony that the software engineer position was a sedentary job either during the hearing, *see* [18-1] 55-56, or in her post-hearing brief, *see* [*id.*] 159-60. Accordingly, plaintiff has forfeited any objection to the classification of her past relevant work as sedentary. *See Todd B. v. Kijakazi*, No. 20 C 6888, 2022 WL 2132542, at *3 (N.D. Ill. Jun. 14, 2022) (plaintiff's failure to object to VE's testimony that he acquired skills from past relevant work that were transferrable to sedentary work resulted in forfeiture of "any objection or claimed deficiency with respect to the ALJ's consideration of the . . . VE's testimony concerning transferability of skills").

7

the record. No remand is warranted, however, because the opinion evidence simply did not support plaintiff's claim to be disabled. The opinion evidence summarized by the ALJ reflected only that:

- Plaintiff could perform medium exertional work. *See* [18-1] 52-53 (opinion of testifying medical expert Dr. Sai Nimmagadda); [*id.*] 67 (opinion of Dr. Charles Kenny during initial disability determination); [*id.*] 90-91 (opinion of Dr. Lisa McMullan during reconsideration-level disability determination).

- Plaintiff was alert and oriented, displayed a normal range of comprehension and concentration, and could handle her own finances. [18-1] 387 (March 14, 2018 opinion of consultative examiner Dr. Debbie Weiss).

- Plaintiff did not meet the criteria for any psychiatric diagnosis. [18-1] 338 (September 11, 2017 opinion of consultative examiner Dr. Shannon Doyle).

- Plaintiff exhibits "spotty judgment in some common situations," but did not meet the criteria for any mental or psychiatric disorder. [18-1] 369 (March 13, 2018 opinion of consultative examiner Dr. Randy Kettering).

Although the ALJ did not follow the relevant regulations for weighing this evidence, it is implicit from the ALJ's discussion of this evidence–none of which reflects that plaintiff's MS imposed meaningful work-related limitations–that the ALJ believed it was consistent with her ruling that plaintiff was not disabled. Indeed, while plaintiff accuses the ALJ of cherry-picking the evidence, *see* [19] 15, plaintiff has not identified any favorable opinion evidence that the ALJ failed to discuss, *see* [*id.*] 15-16. And while plaintiff contends that "[t]he examining doctors noted mental problems," [*id.*] 16, plaintiff notably fails to cite any part of the record to support that claim. In any event, and as the ALJ's accurate recounting of the opinion evidence demonstrates, nothing in the record suggests that any "mental problem" was caused by plaintiff's MS–let alone that it imposed a meaningful limitation on plaintiff's ability to work.[5]

For these reasons, the ALJ's failure to adhere to the SSA's regulations for evaluating and weighing opinion evidence was harmless. *Karr*, 989 F.3d at 513.

---

[5] Plaintiff faults the ALJ for "misstat[ing] the opinions of the non-examining, non-treating physicians as medium work 'with constant pushing/pulling with the left upper and lower extremities.'" [19] 15 (citing [18-1] 16). Plaintiff is correct that the ALJ's summary of this opinion evidence overstated the frequency with which plaintiff could push and pull with her left upper and lower extremities, but plaintiff does not explain how this error undermines the ALJ's finding that plaintiff could perform her past relevant work. Nor does plaintiff's employer's description of plaintiff's job duties suggest that any pushing or pulling with the left extremities was required. *See* [18-1] 185. Accordingly, the Court finds that this error, too, was harmless. *Karr*, 989 F.3d at 513.

8

### D. The ALJ's Evaluation Of Plaintiff's Subjective Allegations Was Not Patently Erroneous.

Finally, plaintiff argues that the ALJ erred in evaluating whether her subjective allegations were consistent with the record. [19] 16-21. Plaintiff contends that the ALJ rejected her allegations about the severity of her symptoms for nine reasons, but "[q]uantity does not equal quality." [*Id.*] 16.

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, Case No. 19 C 1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020). "[T]he ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted).

The ALJ concluded that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" [18-1] 14. In support, the ALJ noted that (1) plaintiff's allegation that she could not work after the disability onset date "is not supported by objective medical evidence"; (2) plaintiff was taking medication that "was working well" and had "tolerable side effects," but also had "elected not to start medication for fatigue"; (3) plaintiff's condition was stable and "has actually improved since the alleged onset date"; (4) plaintiff was noncompliant with her treatment regimen; (5) plaintiff's description of her ADLs was "inconsistent with her complaints of disabling symptoms and limitations"; (6) the record consistently showed that plaintiff "had full recall and attention"; (7) plaintiff gave inconsistent reasons for her alleged inability to work; (8) there was no medical evidence indicating that plaintiff's MS impeded her ability to walk or caused weakness in her left arm and leg; and (9) plaintiff's "presentation and demeanor at the hearing," during which she "closely and fully attend[ed] the hearing proceedings," was "inconsistent with her allegations of disabling symptoms." [*Id.*] 14-16.

Plaintiff makes several valid arguments against the ALJ's subjective symptom determination. For example, the ALJ drew a negative inference from plaintiff's failure to attend a recommended neuropsychological consultation and to follow up with a referral to an ophthalmologist. [18-1] 14-15. But as plaintiff correctly observes, *see* [19] 18, the ALJ never explored plaintiff's reasons for not pursuing this treatment. *See James C. v. Kijakazi*, No. 20 CV 6592, 2023 WL 3886106, at *5 (N.D. Ill. Jun. 8, 2023) ("An ALJ may consider noncompliance with recommended treatment modalities when evaluating the severity of a claimant's symptoms," but "must first

9

explore the claimant's reasons for the lack of medical care before drawing a negative inference[.]") (internal quotation marks omitted). The ALJ also emphasized that plaintiff "performs self-care, prepares meals, drives a car, performs household chores, [ ] goes grocery shopping[,] reads, uses a computer, manages her finances, has friends, goes out for dinner, and watches television." [18-1] 15. "Although an ALJ should consider a plaintiff's daily activities in assessing the severity of a plaintiff's symptoms, an ALJ must be careful not to equate a plaintiff's ability to perform activities of daily living with an ability to work full time." *Latina W. v. Kijakazi*, No. 21 C 5344, 2023 WL 4273663, at *3 (N.D. Ill. Jun. 29, 2023). In this case, however, the ALJ appears to have considered plaintiff's ability complete a handful of ADLs as direct evidence of her ability to work without mental or physical limitations: "Such evidence further supports a finding that the claimant remains capable of performing work involving the reduced range of medium exertion described above." [18-1] 15 (emphasis in original). Finally, it is not clear to the Court that the inconsistency identified by the ALJ in plaintiff's statements to her treaters about why she stopped working in fact existed or sheds any light on the credibility of plaintiff's allegations. The ALJ observed that, while plaintiff testified that she stopped working because "mentally she could not handle it," plaintiff had also told her primary care doctor that she has not been working "as her eyes cannot handle and she does not have the balance either." [18-1] 15 (citing [*id.*] 456). Yet plaintiff also told Dr. Rubinstein that she could not return to work because of "fatigue" and "cognitive impairment," which is consistent with her hearing testimony. [*Id.*] 428 (Dr. Rubinstein's May 14, 2018 treatment note). In addition, it is undisputed that plaintiff was referred for an ophthalmology evaluation–presumably to address concerns with her vision–so it is unclear why the ALJ found it significant that plaintiff cited different reasons for not returning to work, especially given that MS can cause both fatigue and vision problems. *See Milliken v. Astrue*, 397 F. App'x 218, 223 (7th Cir. 2010) ("Fatigue is a common symptom of MS"); *Milton B. v. Kijakazi*, No. 20-cv-5482, 2023 WL 4134812, at *2 n.2 (N.D. Ill. Jun. 22, 2023) ("typical symptoms" of MS "include visual loss").

On balance, however, these "flaws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [plaintiff] was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are[.]" *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original). In this case, enough of the ALJ's reasons for discounting plaintiff's allegations were valid such that the Court finds that the ALJ's subjective symptom determination is supported by substantial evidence.

First, the ALJ found that plaintiff's allegation that her MS caused memory and attention deficits was not supported by the medical record. *See* [18-1] 15. In support, the ALJ relied on notes from five of plaintiff's doctor's visits (which occurred between June 2017 and November 2018) reflecting that plaintiff had full recall and attention. [*Id.*]. Plaintiff argues that the ALJ could not rely on this evidence because these doctors examined plaintiff during relatively brief office visits or evaluations, and none

10

expressly considered whether plaintiff could work an eight-hour day. [19] 19. This argument has no merit. The ALJ was entitled to rely on these doctors' findings regarding plaintiff's memory and attention, which under the regulations are "useful indicator[s] to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [plaintiff's] symptoms and the effect those symptoms . . . may have on [her] ability to work." 20 C.F.R. § 404.1529(c)(2). Plaintiff's argument that the ALJ should not have relied–or relied as heavily–on this evidence is an impermissible request that the Court reweigh the evidence. *See Spring W. v. Saul*, Case No. 20 C 1864, 2021 WL 2529615, at \*2 (N.D. Ill. Jun. 21, 2021) ("In reviewing an ALJ's decision, the Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.") (internal quotation marks and brackets omitted).

Second, the ALJ accurately observed that plaintiff had declined to take prescription medication for her fatigue. [18-1] 14. In support, the ALJ cited an August 21, 2018 treatment note from Dr. Wayne Rubinstein, plaintiff's neurologist, which states that "[w]e elected not to start medications for fatigue (amantadine, modafinil or fluoxetine) at this time. Continue to get 7+ hours of sleep nightly and exercise daily." [*Id.*] 435. "An ALJ is permitted to consider routine and conservative treatment in assessing the severity of a claimant's subjective symptoms." *Angela G. v. Berryhill*, No. 1:17-cv-1788-JRS-DLP, 2019 WL 1055096, at \*5 (S.D. Ind. Mar. 6, 2019). Plaintiff's choice, made in consultation with her neurologist, not to begin prescription medication for her fatigue provides a reasonable basis for the ALJ's conclusion that plaintiff's fatigue was not as severe as alleged. *See Jason R. v. Saul*, No. 2:19-cv-352-JPH-MJD, 2020 WL 13555030, at \*6 (S.D. Ind. Oct. 27, 2020) (ALJ reasonably relied on plaintiff's decision to "prioritize[e] taking Xanax for his anxiety over being prescribed pain medication" in finding that plaintiff's symptoms were not as severe as alleged).

Third, the ALJ reasonably observed that plaintiff's condition was "stable" and had shown signs of improvement since the alleged onset date. Plaintiff was diagnosed with relapsing remitting multiple sclerosis [18-1] 50, 348, a form of MS "in which patients have relapses of MS and periods of stability between relapses. Relapses are episodes of new or worsening symptoms not caused by fever or infection and that last more than 48 hours." *Monika B. v. Saul*, No. 20 CV 638, 2020 WL 7626685, at \*1 n.5 (N.D. Ill. Dec. 22, 2020). In support of her conclusion that plaintiff's condition was stable or improved, the ALJ cited (1) a June 2, 2017 MRI and accompanying report in which neurologist John Ruge opined that, "[c]linically [plaintiff] is much improved, and today she is neurologically intact," [18-1] 320; (2) treatment notes from Dr. Rubinstein on October 17, 2017, February 14, 2018, and May 14, 2018 noting that plaintiff had "stable symptoms and exam" and a stable MRI [*id.*] 348, 373, 430; (3) a November 21, 2018 treatment note from Dr. Rubinstein reflecting a "reduction in disease activity on DMF," *i.e.*, dimethyl fumarate (also known as Tecfidera), "a prescription medicine used to treat people with relapsing forms of multiple sclerosis,"

11

*Watson v. Comm'r of Soc. Sec.*, Case No. 2:17-cv-11978, 2018 WL 4496650, at *3 n.2 (E.D. Mich. Aug. 16, 2018); and (4) the opinions of Dr. Nimmagadda–the medical expert who reviewed the record and testified at the hearing–that plaintiff's MS was "relatively stable to improving" and "remained relatively uncomplicated or stable at this point in time" and that "some of the plaque lesions have improved." [18-1] 50. The Court also observes that a December 2017 MRI was described by Dr. Rubinstein as indicating "brain improved – stable lesions and smaller left post temp + right frontal lesions, resolution of enhancement." [*Id.*] 437.

Against this evidence, plaintiff argues that "MS is not reversible" and that "[t]reatment only slows down progression." [19] 17. That is true, but nothing in the ALJ's decision suggests that the ALJ believed that MS was curable or could be reversed. To the contrary, the ALJ found–based on specific pieces of evidence, including treatment notes from plaintiff's treating neurologist–that her condition was at least stable and that plaintiff herself and at least one MRI showed signs of improvement. Nor is there merit to plaintiff's argument that the ALJ impermissibly cherry-picked the evidence by "[r]elying on her positive reports to the doctor, while discounting the symptoms she reported to the doctor." [19] 17. In this section of her opinion, the ALJ focused, not on plaintiff's subjective reports, but on the objective evidence in the records–doctor's opinions, MRI results, treatment notes–and found that they were inconsistent with plaintiff's allegations about the severity of her symptoms. Again, plaintiff points to no objective evidence that was contrary to that cited and discussed by the ALJ.

Fourth, the ALJ reasonably concluded that the record was inconsistent with plaintiff's claim that she experienced weakness in her left arm and leg and had a diminished ability to walk. [18-1] 15-16. As the ALJ accurately observed, treatment notes consistently reflected that plaintiff had full strength in her extremities during exams on June 20, 2017, October 17, 2017, May 14, 2018, August 21, 2018, and November 21, 2018. [*Id.*]. Likewise, the ALJ cited evidence in support of her conclusion that plaintiff did not have "an uncoordinated gait, motor impairment, sensory deficit or impaired reflexes." [*Id.*] 15. Plaintiff argues that these considerations should not have trumped her testimony that, before being diagnosed with MS, plaintiff had hiked the Grand Canyon but now had difficulty walking a mile. *See* [19] 20. But this argument is simply a request that the Court weigh the evidence differently than the ALJ, but such a request exceeds the scope of the Court's review. *See Spring W.*, 2021 WL 2529615, at *2.

Finally, the ALJ's other reasons for rejecting plaintiff's subjective allegations were reasonably grounded in the evidence. As the ALJ noted, plaintiff was taking medication for her MS that "was working well with tolerable side effects" and that she stopped taking Tecfidera because her "symptoms, exams and MRI" were "stable," [18-1] 18. The ALJ also observed that plaintiff was able to pay attention during the hearing and did not appear to have trouble sitting or be in pain. [*Id.*] 16. While this

12

fact, standing alone, might not have supported the ALJ's adverse credibility finding, the ALJ "was allowed to consider [plaintiff's] physical appearance and demeanor at the hearing as one factor in assessing [her] credibility." *Burton v. Barnhart*, 203 F. App'x 737, 743 (7th Cir. 2006). Finally, while the ALJ did not elaborate on her conclusion that the objective evidence did not support plaintiff's "assertion that she has not been able to work at any time since the alleged disability onset date," the Court understands the ALJ to have meant that none of the medical evidence she reviewed supported plaintiff's contention that her MS caused meaningful work-related limitation. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019) ("The court applies a common-sense reading to the entirety of an ALJ's decision.").

In sum, the ALJ's evaluation of plaintiff's subjective symptom allegations was "imperfect," but "there is substantial evidence supporting her decision to discount [plaintiff's] credibility." *Halsell*, 357 F. App'x at 723. A key theme in plaintiff's brief is that her MS caused work-related mental limitations that prevented plaintiff from performing her past skilled work as a software engineer. *See* [19] 10, 12, 19, 21. But the ALJ's subjective symptom analysis makes clear that the ALJ did not credit plaintiff's claims that her fatigue, brain fog, and cognitive impairment were as severe as plaintiff alleged and prevented her from working. And because there was substantial evidence in the record that permitted the ALJ to reach that conclusion, the Court rejects plaintiff's argument that the ALJ's subjective symptom determination was patently erroneous.

## Conclusion

For the reasons set forth above, plaintiff's request to reverse and remand the SSA's decision [19] is denied, defendant's motion for summary judgment [20] is granted, and the SSA's decision denying plaintiff's application is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 18, 2023**

13